1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9

10   Gregory Mangum,                        )
                                            )
11              Plaintiff,                   )        No. CV-05-1153-PCT-PGR
                                            )
12         vs.                               )
                                            )        ORDER and OPINION
13   Commissioner of Social Security,        )
                                            )
14              Defendant.                   )
     _____     )

15

16         Pending before the Court are the Motion for Summary Judgment (doc. #6)

17   filed by plaintiff Gregory Mangum and the Cross-Motion for Summary Judgment

18   (doc. #10) filed by Jo Anne B. Barnhart, the Commissioner of Social Security. Having

19   considered the parties' memoranda in light of the record as a whole, the Court finds

20   that the plaintiff's motion should be denied and that the Commissioner's motion

21   should be granted pursuant to Fed.R.Civ.P. 56.   THIS ORDER AND OPINION IS

22   NOT FOR PUBLICATION.

23   Background

24         The plaintiff is challenging the Commissioner's denial of his application for

25   Supplemental Security Income (SSI) payments pursuant to Title XVI of the Social

26   Security Act.  The plaintiff applied for the SSI benefits on February 2, 1998, alleging

27   a disability onset date of April 24, 1997 due to impairments to his memory and left

28   side resulting from multiple motor vehicles accidents.  The Administrative Law Judge

1   (ALJ), after holding two short evidentiary hearings, the first on August 14, 2003

2   in which the plaintiff testified, and the second on April 4, 2004 in which a vocational

3   expert testified, entered a decision of non-disability on May 19, 2004; the plaintiff

4   was represented by counsel at both hearings.  Although the ALJ concluded that the

5   plaintiff could not perform his past relevant work due to being severely impaired by

6   alcohol abuse disorder, possible addiction to pain medications, borderline intellectual

7   functioning, alcohol induced mood disorder, panic disorder with agoraphobia, and

8   a pain disorder involving chronic low back pain, neck pain and shoulder pain as a

9   result of multiple traumas, the ALJ found that the plaintiff was not disabled for Title

10  XVI purposes because without the limitations resulting from his alcohol abuse

11  disorder the plaintiff retains the physical and mental residual functional capacity to

12  perform light and sedentary work. (AR 36-37).   The ALJ's decision stands as the

13  Commissioner's final decision given that the Appeals Council denied the plaintiff's

14  request for review. (AR 14).

15  Psychological Evidence

16       Although the plaintiff suffers from both physical and mental impairments, the

17  latter are the focus of the plaintiff's challenge to the ALJ's decision.[1]  The sole

18  medical evidence detailing the plaintiff's mental impairments is that provided by

19  Minette Nance Doss, Ed.D., who performed a complete psychological evaluation of

20  the plaintiff on September 15, 2003 at the request of the Disability Determination

21  Services of the Arizona Department of Economic Security.

22       Dr. Doss noted as to the plaintiff's intelligence that he had in essence only a

23  seventh grade education in that he had failed eighth grade, that he scored overall

24  in the borderline range on the IQ test with a full IQ of 75, and that he presented the

25  
_____

[1]

26       The ALJ's conclusion that the plaintiff has the residual functional capacity to perform
    light work if just his physical impairments are evaluated is supported by evidence from several

27  medical sources, including the records from Dr. Robert Barker and Dr. Ernest Griffith, and the
    plaintiff does not really argue otherwise.

28

1  cognitive profile and demeanor of a slow learner, but not of a retarded individual or

2  one with specific learning disabilities. (AR 664 & 666).   She also noted that the

3  plaintiff showed no signs of organic impairment in that he performed in the average

4  range on the visual-motor tests, and that he tested in the borderline to average

5  range in his memory tests. (AR 666).

6      Dr. Doss concluded that the results of the plaintiff's MMPI-II personality test

7  were invalid and did not warrant interpretation because the plaintiff had "certainly

8  exaggerated his symptomatology and psychological pathology to a very extreme

9  degree." (AR 666-67).

10     Dr. Doss noted that the plaintiff's history is significant for drug and alcohol

11  abuse, that he was then drinking everyday and had drunk regularly all of his life

12  since 1958, and that alcohol dependence appeared to be present and a severe

13  problem for many years. (AR 667).   Dr. Doss further noted that the plaintiff was in

14  constant pain and that he overindulges in Vicodin and possibly has a Vicodin

15  dependence. (AR 667).

16     Dr. Doss diagnosed the plaintiff has having an alcohol-induced mood disorder.

17  (AR 662). In discussing the relationship between the plaintiff's mood disorder and

18  his alcoholism, Dr. Doss variously commented without elaboration that the plaintiff's

19  "chronic alcoholism is so closely intertwined with his mood disorder as to make them

20  inseparable[,]" (AR 662-63), that the plaintiff's "years of depression have also gone

21  hand-in-hand with the chronic alcoholism.   A mood disorder connected with the

22  alcoholism cannot be separated from it[,]" and that the plaintiff's alcoholism "certainly

23  is a depressant which pulls him down further and in addition to the chronic pain he

24  is experiencing.  It is very difficult to sort out if any of these problems existed prior

25  to the drinking behaviors." (AR 668).

26     In addition to the mood disorder, Dr. Doss diagnosed the plaintiff as having a

27  panic disorder with agoraphobia. (AR 662). She concluded that the plaintiff's anxiety

28  was probably more problematic than his mood disorder, that he experiences extreme

1   anxiety mostly when he goes out in that he will shake, stutter and cry and feel

2   helpless and panic to the point of throwing up, and that his problems have gotten

3   progressively worse over the year prior to the testing. (AR 668).  She further

4   concluded that one of the things that the plaintiff cannot do is to get over the panic

5   of going out. (AR 668-69).

6          Dr. Doss completed a Medical Source Statement of Ability to do Work-Related

7   Activities (Mental) form on the plaintiff on October 1, 2003.  In that form she noted

8   that, as a consequence of his borderline IQ and negative attitude, the plaintiff had

9   no impairment in his ability to understand and remember short, simple instructions,

10  he had a slight impairment in his ability to carry out short, simple instructions, he had

11  moderate impairments of his ability to understand and remember detailed

12  instructions and his ability to make judgments on simple work-related decisions, and

13  he had a marked impairment of his ability to carry out detailed instructions. (AR 681).

14  Dr. Doss also noted on the form that due to the plaintiff's panic disorder and

15  alcoholism and mood disorder, he had a moderate impairment of his ability to

16  respond appropriately to changes in a routine work setting, and he had marked

17  impairments of his ability to interact appropriately with the public, with supervisors,

18  and with co-workers, and to respond appropriately to changes in a usual work

19  setting. (AR 682).  Dr. Doss further noted on the form that the plaintiff's alcoholism

20  and/or substance abuse contributed to his mood disorder and unreliability, and that

21  the plaintiff would "not be as depressed & negative" if he was totally abstinent from

22  alcohol and/or substance abuse. (AR 682).

23  Vocational Expert's Testimony

24         George Gluth, a vocational expert, testified at the hearing held on April 6,

25  2004 that someone with the mental limitations described by Dr. Doss would not be

26  able to do the plaintiff's past relevant work as an unskilled construction laborer and

27  that there would not be any work available for such a person in the national

28  economy. (AR 77-78).

Plaintiff's Testimony

The plaintiff testified at the hearing held on May 14, 2003 that he was then 45 years old (AR 57), that he dropped out of school in the eighth grade, at which time he was in a special education class, because he wanted to work and because he was having trouble with his classes (AR 58 and 65-66), that he has never obtained a GED and has never had any vocational training (AR 58), and that he has no problems with reading and writing and that he can do simple arithmetic (AR 58).

He also testified that he has been in four motor vehicle accidents, in 1982, 1987, 1992, and 1999, two of which were motorcycle accidents and two of which were automobile accidents (AR 67-68), and that he had concussions in at least some of them.

He also testified that he cannot work because he has too much pain in his back, left hip, and both legs (AR 59), that his worst pain is in his back and that pain is a ten on a one to ten scale (AR 66), that he has pain radiating down his left leg (AR 67), that the pain in his left arm is a shooting, stabbing pain due to the plates in his arm (AR 67), that the outside of his hand is numb and he often drops things with that hand (AR 67), that he was referred to a back specialists who told him that there was nothing he could do for his back (AR 67), that he has arthritis in his whole body (AR 67), and that moisture and cold affects his pain level (AR 62).

He also testified that he takes hydrocodone, Vicodin, and ibuprofen for pain (AR 60), that he takes amitriptyline to help him sleep and he cannot sleep without it (AR 60, 63 and 71), and that his medications make him nauseous (AR 61).

He also testified that he can only stand or walk for short periods and has to switch positions a lot (AR 61), that he can lift a gallon of water but not 20 pounds (AR 61-62), that he has difficulty reaching his arms out in front of him or over his head and that he is barely able to stoop or bend (AR 62), that he can take care of his apartment and can do housework (AR 62), that he lives with his 75 year old mother who has trouble getting around so he has to help her with some of her daily

activities such as doing grocery shopping for her (AR 68-69), that he has a driver's license but does not drive because of his medicine makes him groggy (AR 62-63 and 68), and that he sleeps 12 or14 hours a day (AR 68).

He also testified that he drinks alcoholic beverages almost daily which includes a couple of beers in the evening (AR 63-64), and that he smokes a pack of cigarettes a day (AR 64).

He also testified that he has problems getting along with people and likes to be isolated (AR 64), that he only has a couple of neighbors as friends (AR 64), that he considers himself to be a nervous person and has anxiety or panic attacks (AR 65), that he has uncontrollable crying at times (AR 71), that he has memory or concentration problems out of the ordinary (AR 65 and 70) and that he just can't think anymore (AR 70), that he has days when he does not want to do anything, even get out of bed (AR 65), that he has feelings of guilt or worthlessness and thoughts of suicide (AR 65), and that he does not read anything and watches television four or five hours a day.

The ALJ's Decision

The ALJ concluded that the plaintiff suffers from several impairments that he rated as "severe" within the meaning of the Social Security Act , *i.e.*, "alcohol abuse disorder, possible addiction to pain medications, borderline intellectual functioning, alcohol induced mood disorder, panic disorder with agoraphobia, and pain disorder as a result of old injuries[.]" (AR 31).  He further concluded that none of the severe impairments, either singly or in combination, meet or equal in severity the criteria for any listed impairment. (AR 31).

The ALJ also concluded that the plaintiff exaggerated the limitations resulting from his impairments and is not credible because the evidence of record did not

support the extreme limitations alleged by the plaintiff.[2]  (AR 31-32).  In support of

his conclusion, the ALJ summarized the medical evidence concerning the plaintiff's

physical impairments provided by the medical reports and records of treating

physicians Dr. Lee Thurston, Dr. Todd Karlik,  Dr. Michael Orr, and Dr. Muhammed

Islam, and examining physicians Dr. Robert Barker and Dr. Ernest Griffith.  (AR 32-

34).  The ALJ, stating that no treating physician had assessed limitations on the

plaintiff's ability to perform work-related activities, accorded "substantial persuasive

weight" to the opinion of Dr. Griffith, an examining doctor, and "the opinions of the

State agency physicians whose opinions are supported by, and consistent with, the

evidence of the entire record." (AR 34).

The ALJ found that the plaintiff

> retains the physical functional capacity to perform light work.  The claimant has the ability to stand and/or walk six hours in an eight hour day, sit six hours in the same eight hour period, and lift and/or carry 25 pounds occasionally and 10 pounds frequently.  The claimant can occasionally bend, twist, stoop, squat, kneel, crawl, and climb, but is unable to do repetitive overhead or heavy work with his left upper extremity, and should avoid machinery and heights.  If someone can do light work, he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods.

(AR 34).

The ALJ then looked at Dr. Doss' psychological evaluation of the plaintiff to

determine the plaintiff's mental limitations and the effect of those limitations on his

ability to work.  In so doing he stated:

> Dr. Doss indicated the claimant's chronic alcoholism is so closely intertwined with his mood disorder as to make them inseparable. However, in the medical source statement, she reported that if the claimant was totally abstinent from alcohol and/or substance abuse, he would be less depressed and negative. ... This statement indicates to the undersigned that the claimant's mood disorder is separable from his alcoholism.

> While the undersigned accepts the opinion of Dr. Doss in regards to the

---

[2] The plaintiff's motion does not challenge the ALJ's credibility finding.

claimant's mental residual functional capacity, it is apparent that the claimant's significant mental limitations result from his abuse of alcohol. Given the report and testing of Dr. Doss, the undersigned finds the claimant's allegations of a complete inability to work due to his mental impairments are not credible. Therefore, in addition to the physical residual functional capacity for light and sedentary work, and absent the limitations resulting from his alcohol abuse disorder, the claimant has no restrictions in his ability to understand, remember and carry out simple instructions, and make judgments on simple work-related decisions. The claimant has mild limitations in his ability to interact appropriately with the public, supervisors and co-workers; respond appropriately to changes in a routine work setting; and, respond appropriately to work pressures in a usual work setting. When considering the limitations resulting from his alcohol abuse disorder, the claimant has marked restrictions in his ability to carry out detailed instructions, interact appropriately with the public, supervisors and co-workers, and respond appropriately to work pressures in a usual work setting; and, moderate limitations in his ability to understand and remember detailed instructions, make judgments on simple work-related decisions and respond appropriately to changes in a routine work setting. ...

*    *    *

... The vocational expert was asked to consider a hypothetical individual with the claimant's vocational profile and the physical residual functional capacity to perform light and sedentary work. Additionally, the individual has the mental limitations set forth by Dr. Doss in her evaluation. Dr. Bluth testified that given the serious mental restrictions, the individual could not perform the claimant's past work or any other work found in the national economy. The undesigned accepts as reasonable the testimony of the vocational expert.

Based on the entire evidentiary record, the undersigned finds that while the claimant may be disabled when all his impairments are considered, including the limitations resulting from his alcohol abuse disorder, he is not "disabled" within the meaning of the Act. Without the limitations stemming from his alcohol abuse disorder, the claimant retains the physical and mental residual functional capacity to perform a significant number of jobs existing in the national economy.

(AR 34-35).

Discussion

The Social Security Act grants this Court only limited authority to set aside the Commissioner's denial of Social Security disability benefits - the Court is statutorily required to affirm the Commissioner's decision unless the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Relevant evidence relied upon by the ALJ in rendering a decision is substantial if it is more than a mere

scintilla and is such that a reasonable person could accept it as adequate to support the ALJ's conclusion. Id. The Court may not reject the ALJ's conclusion if the evidence of record is susceptible to more than one rational interpretation. Id. It is the ALJ's responsibility to determine credibility, resolve conflicts in the medical evidence, and resolve ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The plaintiff's main argument is that the ALJ committed reversible legal error in determining that alcohol abuse was material to the plaintiff's mental disability.[3]

Under the Social Security Act, as amended by the Contract With America Advancement Act of 1996, a claimant's application for disability benefits must be denied if alcohol or drug abuse constitutes a contributing factor material to the determination of disability. 42 U.S.C. § 1382c(a)(3)(J). The key factor in making this determination is whether the claimant would still be found to be disabled if he stopped using alcohol or drugs. Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998); 20 C.F.R.§ 416.935. The claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination. Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001).

The Commissioner argues, and the Court concurs, that the plaintiff has not

---

[3]
Notwithstanding that the ALJ considered the plaintiff to be disabled when all of his impairments are considered, the plaintiff nevertheless also argues that the ALJ committed reversible legal error in failing to properly consider whether his impairments meet or equal Listed Impairment 12.05C (mental retardation). The Court rejects this argument for several reasons. First, the ALJ's evaluation of the medical evidence is sufficiently detailed to constitute an adequate support his ultimate conclusion that the plaintiff did not meet or equal a listed impairment. See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990). Second, the first prong of the Listing 12.05C requires a "valid verbal, performance, or full scale IQ of 60 through 70" which the plaintiff does not meet. Dr. Doss, in her summary of the results of the plaintiff's IQ test, gave him a 75 in verbal, a 78 in performance, and a full scale score of 75. (AR 670). Based on these scores, Dr. Doss concluded that the plaintiff scored intellectually in the borderline range (AR 662), but was "certainly not a retarded individual." (AR 666). Third, the plaintiff has not established that the ALJ was required under Ninth Circuit precedence to obtain a medical expert to opine on the issue of equivalence.

1   met his burden of proving that he would still be disabled for purposes of the Social

2   Security Act if he stopped drinking.  The Court is unpersuaded by the plaintiff's

3   argument that the ALJ impermissibly substituted his own medical opinion for that of

4   Dr. Doss in determining that the plaintiff's mental disorder is separable from his

5   alcoholism.[4]  The ALJ did not, as argued by the plaintiff, "reject" Dr. Doss' opinion;

6   what he did was interpret it differently than the plaintiff did.  While the plaintiff's

7   contention that Dr. Doss' report shows that she was unable to separate the plaintiff's

8   drinking from his mental problems is certainly not an irrational interpretation of the

9   report, the Court concludes that the ALJ's interpretation of the report is one that may

10  be rationally made.  The ALJ's determination is supported by more than a scintilla

11  of evidence in that Dr. Doss expressly diagnosed the plaintiff as having an alcohol-

12  induced mood disorder (AR 662) and stated that the plaintiff would not be as

13  depressed and negative if he were to abstain from alcohol use. (AR 682).  *See*

14  Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)

15  ("If the evidence can reasonably support either affirming or reversing the

16  [Commissioner's] conclusion, the court may not substitute its judgment for that of the

17  [Commissioner].")

18  Therefore,

19      IT IS ORDERED that Plaintiff's Motion for Summary Judgment (doc. #6) is

20  denied.

21      IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary

22  Judgment (doc. #10) is granted.  The Clerk of the Court shall enter judgment

23  _____

24      [4]
        The plaintiff also argues that the ALJ erred in determining that the plaintiff's
25  significant mental limitations result from his abuse of alcohol by failing to take into account that
    Dr. Doss separated the plaintiff's mental impairments into the separate categories of mood
26  disorder, panic disorder, and borderline intellectual functioning.  The Court is unpersuaded
    because Dr. Doss' report can reasonably be read as linking the plaintiff's substance abuse to
27  the totality of his mental problems in that her clinical impression was that "[t]his man's problems
    on a psychological level mainly center around his alcoholism and possible addiction to Vicodin."
28  (AR 668).

1   accordingly.

2        DATED this 30th day of September, 2006.

3

4

5                                    Paul G. Rosenblatt
                                     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28